

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION

                     Plaintiff,

v.

CRISTIAN DE COLLI

                     Defendant.

Civil Action No.

---

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission"), for its Complaint alleges as follows:

### NATURE OF THIS ACTION

1. This is an insider trading case involving highly profitable and highly suspicious purchases of DRS Technologies, Inc. ("DRS") common stock and call option contacts in an account at E*Trade Financial by Defendant Cristian De Colli ("De Colli") from April 10, 2008 through May 7, 2008. These purchases were made in advance of an article that appeared in the Wall Street Journal on May 8, 2008, disclosing advanced negotiations for the purchase of DRS by Finmeccanica SpA ("Finmeccanica") (the "Article"), an Italian aerospace and defense company, at a "significant premium" to DRS's current stock price. DRS issued a press release on May 8 confirming the substance of the Article. After the disclosures, DRS's stock price jumped almost $10, or 16 percent, over the previous day's closing price, and as a result De Colli has reaped substantial profits on his purchases of DRS securities. De Colli is a resident of Rome, Italy.

2. Upon information and belief, while in possession of material, non-public information concerning the unannounced advanced merger negotiations between DRS and Finmeccanica, De Colli purchased 5,700 shares of DRS common stock between April 10 and April 29, 2008 and 3,116 call options for the common stock of DRS between April 15 and May 7, 2008. Of the call options purchased by De Colli, more than 2,400 were purchased between May 6 and May 7, including certain options that were out-of-the-money by over $6 and expired ten days after purchase. On May 8, 2008, following the public disclosure of the information, De Colli liquidated these positions and made illicit profits of over $2.1 million.

## JURISDICTION AND VENUE

3. This Court possesses jurisdiction over this matter pursuant to Sections 21(e), 21A, and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(e), 78u-1, and 78aa].

4. Venue lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain acts, practices, transactions and courses of business constituting the violations occurred in the Southern District of New York.

5. Defendant has directly or indirectly made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the acts, practices, transactions, and courses of business alleged in this Complaint.

6. Defendant will, unless restrained and enjoined, continue to engage in the acts, practices, transactions, and courses of business alleged in this Complaint, or in acts, practices, transactions, and course of business of similar purport and object.

**DEFENDANT**

7. Cristian De Colli, age 28, is a resident of Rome, Italy. He currently serves as a machinery engineer with Technip Italy SpA and has served in this capacity for three years. He holds a five-year degree in Engineering and is proficient in the English language. He is the owner of an account with E-Trade Financial ending in the number "1161" in which 5,700 shares of DRS common stock and over 3,000 call options for DRS common stock were purchased during the four weeks prior to an announcement that Finmeccanica was in "advanced negotiations" to acquire DRS.

**RELEVANT ENTITIES**

8. DRS Technologies, Inc. is a Delaware corporation with its principal executive offices in Parsippany, New Jersey. DRS supplies defense products and services which support military forces, intelligence agencies and prime contractors worldwide. Its common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act, and it trades on the New York Stock Exchange ("NYSE") under the ticker symbol DRS. Options for DRS shares trade on the Chicago Board Options Exchange, the Philadelphia Stock Exchange, and the NYSE's Arca.

9. Finmeccanica SpA is headquartered in Rome, Italy. Finmeccanica designs and manufactures, among other things, helicopters, civil and military aircraft, satellites, missiles, and defense electronics. Shares of Finmeccanica are listed on the Milan Stock Exchange and trade in the United States on the pink sheets under the ticker symbol FINMF.PK.

10. E*Trade Financial Corporation is a broker dealer registered with the Commission based in New York, New York with locations world-wide.

## FACTUAL ALLEGATIONS

### A. The DRS-Finmeccanica Announcement

11. On Thursday, May 8, the Wall Street Journal reported that Finmeccanica was in advanced talks to purchase DRS, with the buyout price constituting at least a 25% premium to DRS' closing share price of $63.74 on the last trading day prior to the announcement. Shares of DRS increased $9.01, or 14 %, to $72.65 in morning trading and closed at $73.89. The stock had been trading between $44.11 and $65 during the 52 weeks prior to the article.

12. That same day, May 8th, via a press release issued through Business Wire at 9:57 a.m. EST, DRS confirmed the Wall Street Journal report, announcing that it was "engaged in discussions contemplating a potential strategic transaction."

13. Prior to the announcement, information concerning DRS' interest in being acquired and the potential agreement with Finmeccanica was confidential, nonpublic information. All individuals and entities involved in negotiation of the DRS-Finmeccanica deal: 1) had been advised that all information relating to the potential acquisition was confidential and nonpublic information, and 2) had agreed to keep the information confidential.

14. In an interview with the Commission staff, De Colli stated that no family members, friends, or anyone else he knew had ever worked for Finmeccanica or DRS.

15. In fact, contrary to his statement to the Commission, De Colli's older brother worked for Finmeccanica between at least 2004 and 2005.

### B. De Colli's Purchases of DRS Stock and Call Options Before the Announcement

16. The timing, prices, and pattern of De Colli's purchases of DRS common stock and call options in the days and weeks prior to the announcement of the DRS-Finmeccanica acquisition indicate that the purchases were based on material non-public information.

17. A call option, or a "call," is a financial contract between the buyer and the seller of this type of option. The buyer of the option has the right, but not the obligation to buy an agreed quantity of a particular security from the seller of the option at a certain time (the expiration date) for a certain price (the strike price). The buyer pays a fee (called a premium) for this right. A call option contract typically gives the buyer the right to purchase 100 shares of the underlying security.

18. The buyer of a call option wants the price of the underlying security to rise in the future; when the market price of the security exceeds the strike price of the option, the purchaser of the option can sell a security purchased through the exercise of the option at the market for a premium. When the market price of the security surpasses the strike price, the option is said to be "in-the-money." The option increases in value when it is "in-the-money."

19. De Colli opened an E* Trade margin account ending in the number "1161" on April 4, 2008. Days later, on April 10, 16 and 18, De Colli wired money into the account in three tranches, $78,963, $240,963 and $101,963 respectively. This total of $421,889, according to De Colli, and as indicated on his online account application, constitutes approximately 90% of De Colli's net worth.

20. On April 10, 2008, the day of the first wire transfer into the account, De Colli began purchasing common stock of DRS. Between April 10 and April 29, De Colli purchased 5,700 shares of DRS.

21. In addition, beginning on April 15, 2008 and continuing through May 7, De Colli systematically purchased four series of call options (two expiring on May 17, 2008 with strike prices of $65 and $70 and two others both expiring on June 24, 2008 with strike prices of $65 and $70). Each call option was, at various times between April 15th and May 7th, out-of-the-money by between $1.26 and $6.71.

22. On April 28, 2008, De Colli liquidated securities in two other companies he had purchased a week earlier in order to purchase DRS options. At that point, 100% of the holdings in the E-Trade account consisted of DRS stock and call options.

23. On May 6, 2008, just two days prior to the article and public announcement, De Colli sold all 5,700 shares of DRS common stock, and used the proceeds to purchase additional call options for DRS common stock. Of the 3,116 call options purchased by De Colli, over 2,500 were purchased between May 6 and May 7, including certain options that were out-of-the-money by over $6 and expired ten days after purchase.

24. De Colli's 3,116 purchases of call options for DRS common stock were as follows:

| Purchase Date | Option Series | Quantity Purchased | Strike Price | De Colli's Trading as a Percent of CBOE Market Volume |
|---|---|---|---|---|
| 4/15/08 | June 2008 C | 100 | $65 | N/A |
| 4/29/08 | June 2008 C | 250 | $65 | 26.43% |
| 5/2/08 | May 2008 C | 76 | $70 | 71.7% |
| 5/2/08 | June 2008 C | 200 | $70 | 40.32% |
| 5/6/08 | May 2008 C | 1,421 | $65 | 47.9% |
| 5/6/08 | June 2008 C | 310 | $65 | 21.76% |
| 5/7/08 | May 2008 C | 100 | $70 | 28.9% |
| 5/7/08 | May 2008 C | 659 | $65 | 22.92% |

25. On May 8, following the announcement, De Colli sold his call options and made illicit profits of more than $2.1 million.

6

## CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and
### Rule 10b-5 Promulgated Thereunder

26. Paragraphs 1 through 25 are realleged and incorporated by reference.

27. Upon information and belief, at the time Defendant De Colli purchased common stock and call option contracts in DRS as set forth above, he was in possession of material, nonpublic information about Finmeccanica's offer to acquire DRS. Defendant De Colli (a) knew, or recklessly disregarded the fact that his trading was in breach of a fiduciary duty or similar duty of trust and confidence owed to the shareholders of DRS or to the source from whom he received the material nonpublic information; or (b) knew or should have known that material nonpublic information about the acquisition had been communicated to Defendant De Colli in breach of fiduciary or similar duty of trust and confidence.

28. Defendant De Colli has liquidated his option position and made more than $2.1 million in illegal profits because the value of the options that he purchased, as set forth above, rose in response to the public announcement of the proposed acquisition.

29. By reason of the foregoing, Defendant De Colli, directly and indirectly, violated Section 10(b) of the Exchange Act [15 U.S.C Sec 78j(b)] and Rule 10b-5 thereunder [17 C.F.R Sec 240.10b-5], and is likely to commit such violations in the future unless enjoined from doing so.

## PRAYER FOR RELIEF

WHEREFORE, the Commission requests that the Court enter judgment:

(a)    permanently enjoining the Defendant from violating Section 10(b) of the Exchange Act or Rule 10b-5;

  (b)  requiring the Defendant to disgorge the ill-gotten gains obtained through the violations alleged herein, with prejudgment interest;

  (c)  requiring the Defendant to pay a civil penalty; and

  (d)  providing such other relief as may be appropriate.

Dated: Washington, D.C.
   May 14, 2008

              Respectfully submitted,

*/s/ Richard E. Simpson*

A. David Williams (Pro Hac Vice pending)
Richard E. Simpson (RS-5859)
Antonia Chion
Daniel Chaudoin
Noel A. Gittens
E. Laurita Finch
Kevin Guerrero
Attorneys for Plaintiff
Securities and Exchange Commission
Division of Enforcement
100 F Street, N.E.
Washington, D.C. 20549-4010
Telephone: (202) 551-4548 (Williams)
Facsimile:  (202) 772-9246 (Williams)
williamsdav@sec.gov